IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**TIFFANY DARVILLE**            **PLAINTIFF**

**VS.**            **CASE NO. 4:05CV00893**

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, ET AL.**      **DEFENDANTS**

**ORDER**

Pending before the Court is defendants' Motion for Summary Judgment to which plaintiff has responded. For the reasons stated below, the motion is granted (#14).

Plaintiff, a female, brings her complaint alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1983, and the Arkansas Civil Rights Act ("ACRA").[1] Defendant contends that plaintiff has failed to present a *prima facie* case of discrimination.

I. *Facts*

Plaintiff worked at the Pulaski North office of the Department of Health and Human Services ("DHHS") as a Family Support Specialist during February through June of 2003. Plaintiff interviewed DHHS clients to determine if they were eligible for various programs administered by DHHS such as the Transitional Employment Assistance program ("TEA

---

[1] To the extent that plaintiff attempts to bring disparate treatment based upon sex or retaliation in violation of Title VII, the motion as to these claims is granted as she has failed to exhaust her administrative remedies by failing to state these claims in her EEOC charge. Even if plaintiff had raised these claims in her EEOC charge, they would fail as she has failed to establish an adverse employment action. This same reasoning applies to her disparate treatment and retaliation claims she might bring under under § 1983.

1

program"), Medicaid, and food stamps. Plaintiff's immediate supervisor was Erma Allen and Odell Embry was the direct supervisor of Allen.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 4, 2003 alleging Embry sexually harassed her in January or February of 2003 resulting in a hostile work environment. The EEOC made a determination that there was credible witnesses testimony from former and current employees to indicate that plaintiff was subjected to sexual harassment on a continuing basis.

The first incident of alleged sexual harassment occurred sometime between January and March of 2003. Prior to January or February of 2003, plaintiff considered Embry's behavior to be "friendly" as opposed to sexual harassment.

In either February or March of 2003, plaintiff after learning from a client that a person could be approved for "diversion" funds to buy furniture, approached Embry and asked if she would qualify for "diversion" funds to purchase furniture.[2] Plaintiff testified that she was "kind of joking" when she made the remark to Embry. Plaintiff testified that Embry responded by saying, " No, you can not get a diversion to buy furniture, but if you act right I can buy you some furniture." When asked what he meant, Embry stated that plaintiff "wasn't ready for that yet." Plaintiff was confused by this remark.

After the "diversion" conversation, plaintiff testified that Embry met her at least once a week in the hallway where he would whisper to her, invite her to meet him somewhere after work, to got to lunch, or ask her if he could come to her home. Plaintiff testified that Emby

---

[2]"Division" funds are one-time monies paid to a person to divert them from going into the TEA program.

bumped or rubbed against her while passing in the hallway.[3]  Plaintiff also testified that Embry looked at her over the top of his glasses as if he were seeing her nude and rubbed and licked his lips.

Plaintiff testified that sometime after February or March, Embry approached her as she was getting into her car and commented that but for the fact that plaintiff already had money, she would let him go home with her.

In May, a co-worker talked to plaintiff about Embry's sexually harassing behavior and that they should report him. Plaintiff testified that she first reported Embry to Allen in mid to late-May of 2003, and that Allen gave her a tape recorder to tape any conversation with Embry and told her to go to Mr. Robert Williams the manager of DHHS Pulaski County offices.[4] It is also her testimony from late May until June 8, 2003, Embry only spoke to her on two more occasions.

Plaintiff testified that in June of 2003, Embry was at the back entrance of the building smoking and when she approached, he told her that she sexually excited him and asked her to look down at his groin area. Plaintiff testified that when she ignored him and tried to enter the building, Embry grabbed, and held, her arm for an short period of time, before allowing her to enter the building.

---

[3]Plaintiff also testified that Embry only touched her on one occasion. A plaintiff cannot create a factual dispute by giving conflicting testimony. However, for the purposes of this motion, the Court will accept plaintiff's testimony that Embry bumped into her on these occasions.

[4]Allen denies that plaintiff told her about any sexual harassment and that plaintiff only asked her if Allen had a tape recorder she could borrow. This factual dispute does not preclude the grant of summary judgment as assuming plaintiff's version of this incident is the one which the jury would believe, plaintiff has failed to establish a *prima facie* case.

Within a day, plaintiff reported this incident to Allen who referred her to Robert Williams. Plaintiff met with Williams on June 10, 2003 to discuss her allegations regarding Embry's behavior. Williams requested that plaintiff draft an incident report regarding her allegations which she completed that same day.

From this date forward, plaintiff testified that Embry did not sexually harass her, but that he did stare at her while she was having conversation with male co-workers, gave her mean looks, licked his lips and rarely spoke to her after this date.

DHHS conducted an investigation by interviewing twelve people which resulted in a 29-page report which concluded that plaintiff's complaints were unsubstantiated. Bernard Pighee, a DHHS grievance officer, reviewed the investigation report and found that plaintiff's allegations were unsubstantiated.

Williams offered to transfer plaintiff to another office, which she refused as it would mean a more difficult commute for work and for her children's school. Williams did not transfer Embry. Since these incidents, plaintiff has been promoted twice and transferred by her own choice to another office.

DHHS has an anti-harassment policy with a complaint procedure in place. The employee handbook has a sexual harassment section and is to be distributed to all newly hired employees. Plaintiff testified that she was introduced to the policy after making her formal complaint against Embry. DHHS provides sexual harassment training in its mandatory Supervisor Training Course.

Plaintiff testified that it was her understanding that if she reported an incident of sexual harassment, that DHHS was going "to do something about it." Plaintiff testified that she did not

receive any information regarding DHHS's sexual harassment policy until after she reported Embry's actions.

II. *Discussion*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir.2001); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399 (8th Cir.1995).

A. *Plaintiff's Title VII claims*

At the summary judgment stage in Title VII employment discrimination action, in the absence or direct evidence of discrimination, an employee must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm, specifically, by presenting a *prima facie* case of intentional discrimination plus sufficient evidence that one or more of the employer's proffered nondiscriminatory reasons is a pretext for unlawful discrimination. *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004).

Under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 801-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must first establish a *prima facie* case of discrimination to establish a claim under Title VII. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002).

To establish a *prima facie* case of hostile work environment sexual harassment, plaintiff must demonstrate: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. *See McCowan v. St. John's Health Sys., Inc.*, 349 F.3d 540, 542 (8th Cir. 2003) (citation omitted). "Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nitsche v. CEO of Osage Valley Elec. Co-op*, 446 F.3d 841, 845 (8th Cir. 2006) (quoting *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir.1998).

To determine if the work environment was sufficiently hostile or abusive, Courts ask whether "the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Id.* at 846.

The Court of Appeals for the Eighth Circuit has repeatedly adhered to a high standard on sexual harassment claims. *See Powell v. Yellow Book USA,* 445 F.3d 1074 (8th Cir. 2006) (no actionable hostile work environment based on co-worker talk of sexual exploits and fantasies, and propositioning plaintiff for sex); *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1100-03 (8th Cir. 2005) (finding no objectively hostile work environment created by defendant's unwelcome sexual advances on three separate occasions over a nine-month period, including asking the employee to watch pornographic movies with him, hugging and kissing, and grabbing the employee's buttocks and thigh); *Meriwether v. Carauster Packaging Co.*, 326 F.3d

990 (8th Cir. 2003) (deciding a single incident of grabbing a co-worker's buttock with force near her upper thigh and later joking about the incident did not rise to necessary level); *Burkett v. Glickman*, 327 F.3d 658, 662 (8th Cir. 2003) ("Offhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment."); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002) (holding no actionable hostile work environment where co-employee asked plaintiff if she would have a relationship with him, touched the plaintiff's hand on four to five occasions, requested the plaintiff sketch a sexually objectionable planter, asked plaintiff to complete a task on his computer where its screen saver depicted a naked woman, and asked plaintiff to type a document for him containing sexually offensive material).

The actions complained of in this case are that (1) for a period of three months Embry at least once a week asked plaintiff to meet him or to have dinner with him; (2) Embry bumped or rubbed against her while passing in the hallway; (3) Embry looked at her over the top of his glasses as if he were seeing her nude, and rubbed and licked his lips; (4) on one occasion Embry approached her when she was getting into her car and commented that plaintiff would let him go home with her if she did not have any money; and (5) on or around June 8, 2003, Embry told plaintiff that she sexually excited him, asked her to look down at his groin, grabbed, and held, her arm for an short period of time, before allowing her to enter the building.

After taking into account of all the surrounding circumstances of this case, and assuming plaintiff's version of the facts as true, plaintiff has failed to demonstrate an actionable hostile work environment sexual harassment claim. *See Tuggle v. Mangan*, 348 F.3d 714 (8th Cir. 2003) (in § 1983 qualified immunity case no actionable hostile work environment based on

supervisor's inappropriate sexual comments, taking a photograph of plaintiff's from behind and giving plaintiff undesirable work assignments).[5]

The Court has taken into consideration the EEOC's conclusion that there were credible witnesses's testimony that indicated plaintiff was subjected to sexual harassment on a continuing basis. However, this EEOC's determination does not, on its own, defeat a grant of summary judgment. *See Horn v. University of Minnesota*, 362 F.3d 1042 (8th Cir. 2004).

B. *Plaintiff's 42 U.S.C. 1983 Claims*

"Sexual harassment by state actors violate[s] the Fourteenth Amendment and establishes a section 1983 action." *Wright v. Rolette County*, 417 F.3d 879 (8th Cir. 2005) (*quoting Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003). "Sexual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation and the elements of a *prima facie* case are the same regardless of which statute the plaintiff uses to seek relief." *Id.*

Based upon the holding made regarding plaintiff's Title VII claims, defendant's motion for summary judgment is granted on plaintiff's § 1983 claims.

Even if plaintiff had established § 1983 claims against DHHS, it would be entitled to summary judgment on any claims for monetary damages against DHHS, or Embry in his official capacity, as they are immune from damages. *See Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) ( the state is immune from money damages and suit against state employee in official capacity is a suit against the state). While plaintiff could be entitled to injunctive relief

---

[5]If plaintiff had established a hostile work environment Title VII claim against Embry, he would be entitled to summary judgment as Embry is not an "employer" for Title VII purposes. *See Bonomolo-Gagen v. Holmquist*, 121 F.3d 446 (8th Cir. 1997) (*per curium*) (supervisors cannot be held individually liable under Title VII).

against DHHS or Embry in his official capacity, such a claim would fail as she has failed to establish that the alleged violation of her Fourteenth Amendment rights was caused by a "unconstitutional governmental policy or custom." *See Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989).

C. *Plaintiff's State Claims*

"[T]he Arkansas Supreme Court looks to decisions interpreting the federal civil rights laws in analyzing [sex] discrimination claims under the Arkansas Civil Rights Act." *Crone v. United Parcel Service, Inc.*, 301 F.3d 942 (8thCir. 2002) (citing *Flentje v. First Nati'l Bank*, 240 Ark. 563, 11 S.W. 3d 531, 537 (2000)). Because plaintiff has failed to state claims under Title VII and § 1983, she has failed to state claims under ACRA as well.

III. *Conclusion*

Defendant's Motion for Summary Judgment is granted and a judgment will be entered accordingly.

IT IS SO ORDERED THIS __2__ day of __April__, 2006.

_____
James M. Moody
United States District Court